UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **BILLY MILCHAK,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | 3:23-CV-00441-ATB |
| | § | |
| **HOME DEPOT, U.S.A., INC.,** | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM ORDER**

The liability phase of this premises-liability trial is ongoing. On June 18, 2025, Defendant Home Depot, U.S.A., Inc. called Dr. Jeffrey Broker, a biomechanics expert, to testify that the accident at issue could not have occurred as Plaintiff Billy Milchak alleges. Before cross-examination, the parties approached the bench, and Defendant moved to exclude any testimony from Dr. Broker about his work in a different case involving falling lumber at another of Defendant's stores ("the Houston Case").

Before the Court is Defendant's "Motion to Exclude Evidence of a Different Lawsuit" ("Motion") (ECF No. 100) under Federal Rules of Evidence 401 and 403, in which it argues that any reference to the Houston Case and its details would be prejudicial, and confusing and misleading, as it could lead the jury to assume that the incidents, circumstances, and Defendant's knowledge in both cases are the same for establishing liability. Mot. at 1.

But Plaintiff retorts that, as his expert report disclosed under Federal Rule of Civil Procedure 26(a)(2)(B) reflects, Dr. Broker relied on his prior work in the Houston Case in forming his opinions in this case. *See* Resp. in Opp'n at 5–6, ECF No. 101;

*see also id.*, Ex. 2, ECF No. 101-2 [hereinafter "Expert Report"]. Plaintiff also retorts that, during his deposition, Dr. Broker testified that some of his opinions in this case are "similar" to those in the Houston Case because the physics and geometry in both incidents are "extremely similar" and involve lumber of "the same size and length." *Id.* at 3; *see also id.*, Ex. 1, ECF No. 101-1 [hereinafter, "Broker Deposition"]. In sum, Plaintiff contends that the Court should permit him to cross-examine Dr. Broker about his work in the Houston Case, as Dr. Broker conceded the data, analysis, and opinions are the same in both cases. *Id.* at 4.

## STANDARD

Federal Rule of Evidence 401 provides that evidence is relevant if (a) it tends to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Even if evidence is relevant, courts may exclude such evidence under Rule 403 if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Texas courts have held that evidence of other accidents, near accidents, or similar events may be relevant and admissible in negligence cases. *See, e.g., Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 138 (Tex. 2004) (products liability); *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 148 (Tex. App.—Houston 2018) (wrongful death); *McEwen v. Wal-Mart Stores, Inc.*, 975 S.W.2d 25, 29 (Tex. App.—San Antonio 1998) (premises liability). In premises liability cases, such evidence may be relevant to show the existence of a dangerous condition, whether the dangerous condition

posed an unreasonable risk of harm (that is, whether it was probable and foreseeable), and whether the defendant had actual or constructive knowledge of the dangerous condition. *See Klorer v. Block*, 717 S.W.2d 754, 760 (Tex. App. 1986), *writ refused NRE* (Mar. 4, 1987). The relevance of such evidence, however, depends on the purpose for which the proponent offers it, making it admissible for some purposes but not others. *Armstrong*, 145 S.W.3d at 138.

To admit evidence of other accidents, near accidents, or similar events, the proponent must establish: (1) a predicate of similar or reasonably similar conditions; (2) a connection between the conditions in some "special way"; or (3) that the incidents occurred by means of the same instrumentality. *Sun Coast Res.*, 562 S.W.3d at 148 (citing *McEwen*, 975 S.W.2d at 29). "Reasonably similar" generally means the same type of occurrence, though not identical circumstances, as a jury can evaluate any minor differences between the incidents. *See Armstrong*, 145 S.W.3d at 138; *Arreola v. Union Pac. R.R.*, 657 S.W.3d 789, 823 (Tex. App.—El Paso 2022); *Klorer*, 717 S.W.2d at 760. The required degree of similarity for admissibility varies based on the purpose for which the proponent offers the evidence. *Armstrong*, 145 S.W.3d at 138.

Yet evidence of other accidents, near accidents, or similar events is inadmissible if it would cause undue prejudice, confusion or delay. *Id.* For example, proponents cannot use proof of what happened in another accident, without more, to prove what happened in the current one. *Id.* Nor can they introduce extensive evidence of other accidents to distract the jury from the facts at hand. *Id.*

## DISCUSSION

Plaintiff argues that Dr. Broker's testimony about his work in the Houston Case is relevant because he admits in both his Expert Report and deposition that he relied on the same data, analysis, and opinions in that case to form his opinions in this case. Resp. in Opp'n at 5–6.

Plaintiff intends to elicit this testimony for five reasons. First, to show that the alleged dangerous condition here poses an unreasonable risk of harm. Resp. in Opp'n at 7. Second, to show Defendant had actual or constructive knowledge of the alleged dangerous condition. *Id.* Third, to show that Defendant's "denial that the [safety poles] were not there for customer safety" was unreasonable. *Id.* Fourth, to cross-examine Dr. Broker about his data, analysis, and opinions from the Houston Case for the jury to evaluate the basis and weight of his opinions in this case. *Id.* at 7–8. And fifth, to cross-examine Dr. Broker about payments he has received for prior testimony favoring Defendant, to establish potential bias. *Id.* at 8.

In his Expert Report, Dr. Broker states that he relied on information obtained from the inspection of Home Depot Store 1518 that he conducted on August 28, 2017, to:

> (a) document the lumber storage hardware systems and geometry,
> (b) validate/document the manner in which lumber intentionally made to fall from lumber stacks drops over the stack and support edges, and
> (c) weigh the type of lumber (2x4x10s) reportedly involved in Mr. Milchak's incident.

Expert Report at 20. He explains that he relied on this information from 2017 because

> [i]n previous case involving a claim of 2x4x10s falling from a cantilever support rack, very similar to [Plaintiff's] case, testing was performed to explore and document the manner in which the 2x4s fall. In this previous case, one yellow support rod was in place. Testing indeed validated the expected actions of 2x4x10s made to fall from a stack atop the cantilever support beams.

*Id.* at 24. Dr. Broker also includes a "sequence of images" from a 2017 reenactment involving a sixty-foot-tall subject and a lumber stack of 2x4x10 boards with a single safety pole installed and another pole missing. *Id.* at 25.

During his deposition, Dr. Broker testified that he conducted the 2017 inspection of Home Depot Store 1518 when he worked on the Houston Case. *See* Broker Dep. at 22:2–16; 24:7–8. He explained that the plaintiff in the Houston Case claimed that he was struck in the arm, and maybe his neck, after interacting with a lumber stack of 2x4x10 boards with a single safety pole installed and another pole missing. *Id.* at 22:17–23:25. Dr. Broker also testified that while the claimed points of impact differ between the two cases, some of his opinions in the Houston Case were "very similar" or "very much the same" as in this case because the "physics don't change" and "the geometry is extremely similar." *Id.* at 25:6–21. He explained that "the physics and the geometry of the site define the nature and potential for injuries to customers standing near by the wood," and that both individuals (Plaintiff and the plaintiff in the Houston Case) had "the same type of interaction with the lumber." *Id.* at 25:6–26:11.

After reviewing Dr. Broker's Expert Report and deposition testimony, the Court concludes that Plaintiff has established a predicate with the required degree of

similarity to admit Dr. Broker's testimony about his work in the Houston Case for some purposes, but not others.

First, Plaintiff **may** elicit testimony from Dr. Broker about his work in the Houston Case to show whether the alleged dangerous condition here posed an unreasonable risk of harm (that is, whether the alleged danger was probable and foreseeable).

Before proceeding with its analysis, the Court pauses to address Plaintiff's contention that "[a]t the core of [his] cause of action is that the missing restraint rod was a hazardous condition that [Defendant] knew or should have known about." Resp. in Opp'n at 7.

In *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406 (Tex. 2006), the Texas Supreme Court explained that "an unreasonably dangerous condition for which a premises owner may be liable is the condition at the time and place [at which the] injury occurs, *not some antecedent situation that produced the condition.*" *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006) (emphasis added). For example, the Texas Supreme Court explained that, in an earlier case, "water on the floor of a basketball court could be an unreasonably dangerous condition, but not the leaky roof that would eventually allow water to drip onto the floor if it rained." *Id.* at 408 (citing *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536–37 (Tex. 1996) (per curiam)). It also explained that, in another case, "a grocery store's self-service display of loose grapes in a recessed bowl on a rimmed table standing on a non-skid floor and surrounded by mats and warning cones was not an unreasonably dangerous condition; rather, the grape on which the plaintiff slipped was the dangerous

condition." *Id.* (citing *H.E. Butt Grocery Co. v. Resendez*, 988 S.W.2d 218, 218–219 (Tex.1999) (per curiam)). The Texas Supreme Court further distinguished these cases from another in which it held that a store's self-service display of loose grapes in an open, slanted bin above a bare, green linoleum floor was itself an unreasonably dangerous condition because, together "with the absence of any covering on the store's tile floor," the display frequently caused the grapes to become floor hazards. *Id.* (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 297 (Tex. 1983)).

Based on these cases, the Texas Supreme Court in *Brookshire* rejected the plaintiff's argument that a soft-drink dispenser, surrounded by three mats, was the unreasonably dangerous condition in that case, holding instead that the ice on the bare floor where she slipped was the dangerous condition. *Id.* It reasoned that no evidence suggested that "the soft drink dispenser was set up in such a way that ice on the floor was a greater danger than one would ordinarily encounter with such dispensers, or that customers, though prone to spills, were any more prone around this dispenser." *Id.* It also rejected the plaintiff's argument that the dispenser was itself unreasonably dangerous because "there should have been more mats and warning signs." *Id.* It reasoned that such arguments were relevant to whether the defendant failed to exercise ordinary care, as there is almost always more that could be done to prevent accidents. *Id.* It emphasized that "[a] condition is not unreasonably dangerous simply because it is not foolproof," because "[o]therwise, similar evidence could be used to show that the entire grocery store was unreasonably dangerous." *Id.*

It follows then, that as in *Brookshire*, Plaintiff cannot claim here that the absence of a safety pole was the alleged dangerous condition, rather than the lumber stack that became unstable. Indeed, the safety poles here are analogous to the mats in *Brookshire*: just as the mats were intended to mitigate the risk posed by spilled ice resulting from foreseeable customer interactions, the safety poles here similarly mitigate the risk posed by unstable lumber stacks resulting from foreseeable customer interactions. No evidence presented shows that the lumber stack or its rack here were more unstable than ordinary stacks or racks without customer interaction, or that customers were any more likely to destabilize this particular stack or its rack through foreseeable manipulation.

With this mind, Plaintiff can still elicit testimony about Dr. Broker's work in the Houston Case to show that the alleged dangerous condition here—the lumber stack that became unstable—posed an unreasonable risk of harm by showing that such danger was probable and foreseeable. As Dr. Broker explained during his deposition, "the physics and the geometry of the site define the nature and potential for injuries to customers standing near by the wood," and that both individuals (Plaintiff and the plaintiff in the Houston Case) had "the same type of interaction with the lumber." Broker Dep. at 25:6–26:11. To be sure, Dr. Broker opined in both cases that the alleged series of events could not have caused the specific points of contact where the boards allegedly struck both individuals. But Plaintiff may still attempt to elicit testimony from Dr. Broker supporting foreseeability of the alleged dangerous condition here, as he has established the predicate with required degree of similarity.

Yet Defendant insists that any testimony about Dr. Broker's work in the Houston Case would be prejudicial, and also confuse and mislead the jury, because it "would suggest . . . that the cases are exactly the same with the exact same incident, circumstances, knowledge of employees, and injury." Mot. at 1. For these reasons, Defendant also argues that Plaintiff cannot use such testimony to establish foreseeability of the alleged dangerous condition. *Id.* at 5.

But the Court disagrees. Here, it is Defendant's own expert whose opinions and deposition testimony established the predicate with required degree of similarity. In fact, when Plaintiff objected to Dr. Broker testifying during the liability phase on the grounds that he would offer opinions about Plaintiff's injuries and their severity (an objection which the Court overruled), Defendant argued that Dr. Broker would testify only about where the boards allegedly struck Plaintiff to contest proximate causation. In other words, Defendant contended that Dr. Broker would address whether the series of events that Plaintiff alleges could have caused the boards to strike him in the manner he claims, not to challenge whether Plaintiff in fact sustained any injuries or the extent of those injuries. So, Defendant cannot now ask to have it both ways, relying on Dr. Broker's testimony to contest proximate causation while simultaneously seeking to bar Plaintiff from cross-examining him about the bases and sources of those opinions. To the extent Defendant wishes to highlight any differences to the jury, it may do so during its redirect examination of Dr. Broker.

What is more, Defendant's argument that evidence of other accidents is relevant only when such incidents with reasonably similar circumstances occurred at the *specific* premises at issue is misplaced. *See* Mot. at 5. Indeed, the premises

liability claims in the cases that Defendant cites to support its argument all involve criminal acts of third parties, where a different standard for foreseeability applies. *Compare Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) ("When the 'general danger' is the risk of injury *from criminal activity*, the evidence must reveal 'specific previous crimes on or near the premises' in order to establish foreseeability." (emphasis added)), *with Duncan v. First Texas Homes*, 464 S.W.3d 8, 18 (Tex. App.—Ft. Worth 2015) ("Foreseeability in this context does not require that the exact sequence of events that produced an injury be foreseeable. Instead, only the general damage must be foreseeable. Because this definition precludes a definitive, objective test, the extent to which a condition is unreasonably dangerous is ordinarily a fact question." (cleaned up)).

That said, Plaintiff **may <u>not</u>** elicit testimony from Dr. Broker about his work in the Houston Case to show that Defendant had actual or constructive knowledge of the alleged dangerous condition *at the time and location at issue here,* or that Defendant's "denial that the [safety poles] were not there for customer safety" was unreasonable. Resp. in Opp'n at 7.

To begin, actual knowledge in premises liability cases "requires knowledge that *the dangerous condition existed at the time of the accident*, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart,* 249 S.W.3d 412, 414–15 (Tex. 2008) (emphasis added). As the Court explained at length above, as the alleged dangerous condition here is the lumber stack that became unstable *at the store at issue here*, testimony about Dr. Broker's work in the Houston

-10-

Case cannot establish that Defendant had actual or constructive knowledge of the condition here. Indeed, the 2017 incident took place at another store and is distant in both time and place. *See Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 567 (Tex. 2006) ("The question of constructive notice requires analyzing the combination of proximity, conspicuity, and longevity."). Plaintiff also fails to explain how Defendant's "denial that the [safety poles] were not there for customer safety" was unreasonable is relevant to any element of his premises liability claim—much less, how testimony about Dr. Broker's work in the Houston Case could help establish it.

Third, Plaintiff **may** cross-examine Dr. Broker about his data, analysis, and opinions from the Houston Case so that the jury can evaluate the basis and sources of his opinions in this case and assign weight to them. Resp. in Opp'n at 7–8. But Plaintiff **may** <u>**not**</u> use his cross-examination to delve into the specifics of the Houston Case to the extent that it distracts the jury from the facts here or effectively relitigates the claims from the Houston Case. Likewise, Plaintiff **may** <u>**not**</u> use his cross-examination to elicit specifics about the Houston Case such that it constitutes improper character evidence under Rule 404, including, for example, eliciting testimony about whether Defendant was found liable or grossly negligent in the Houston Case.

That said, Plaintiff may refer to the Houston Case simply as another "case," which is the same term that Dr. Broker uses in his Expert Report and deposition. To the extent that Defendant argues that such references are unduly prejudicial, the parties' proposed jury charge already addresses this concern by including an agreed

pattern jury instruction that instructs the jury not to draw any negative inference from the mere fact that someone filed a lawsuit. *See* ECF No. 91 at 4.

And fourth, Plaintiff **may** cross-examine Dr. Broker about payments he has received when testifying for Defendant in previous cases to show his bias—which as Defendant notes, he has already begun to do. Resp. in Opp'n at 8; *see also In re Makris*, 217 S.W.3d 521, 525 (Tex. App.—San Antonio 2006) ("To establish bias or prejudice, 'an expert medical witness may be cross-examined regarding the number of times he has testified in lawsuits, payments for such testifying and related questions.'"). But Plaintiff cannot use his cross-examination to delve into the details of these payments to the extent that it distracts the jury, effectively turning it into a mini trial on every nickel and dime that Dr. Broker has ever received from Defendant or relitigating past cases in which he has testified.

For these reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendant's "Motion to Exclude Evidence of a Different Lawsuit" (ECF No. 100), consistent with the rulings and reasoning set forth elsewhere in this Memorandum Order.

**So ORDERED and SIGNED this 23rd day of June 2025.**

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**